UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ORGANIZATION FOR COMPETITIVE MARKETS
PO BOX 6486
LINCOLN, NE 68506

CIVIL ACTION NO. 14-1902

PLAINTIFF

v.

OFFICE OF INSPECTOR GENERAL
UNITED STATES DEPARTMENT OF AGRICULTURE
1400 INDEPENDENCE AVE. SW
WASHINGTON, D.C. 20250

DEFENDANT

## COMPLAINT FOR INJUNCTIVE RELIEF

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, as amended, seeking disclosure of agency records requested from the Office of Inspector General ("OIG" or "Defendant") relating to an audit of the Department of Agriculture's beef promotion program, more commonly known as the beef checkoff. *See* 7 U.S.C. § 2901 *et seq.*; 7 C.F.R. Part 1260. It has been more than 18 months since the Organization for Competitive Markets ("OCM") made its request and OCM is still awaiting compliance determinations and production of a significant number of responsive records. Of those records that have been processed, Defendant has claimed sweepingly broad categorical exemptions on the barest of substantiations. OCM asks this Court to order

Defendant to complete its processing of OCM's request and immediately produce all responsive records in accordance with the requirements of the FOIA.

## JURISDICTION

2.   The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 5 U.S.C. § 552(a)(4)(B) (FOIA).

## VENUE

3.   Venue is proper in this judicial district under 28 U.S.C. § 1391(e). Defendant resides in this district, and a substantial part of the events or omissions giving rise to this action occurred or will occur in this district.

## THE PARTIES

4.   Plaintiff OCM is a national, non-profit public policy organization with a membership that includes farmers, ranchers, attorneys, agricultural economists, rural sociologists, legislators, and others. OCM's mission is to work for transparent, fair, and truly competitive agricultural and food markets. OCM has been at the forefront of the effort to bring about fair play in agricultural markets and thereby stem the decline of independent family farming and ranching and the degradation of America's rural communities.

5.   OCM also closely monitors federal checkoff operations and expenditures, many of which directly bear on issues relating to transparency and accountability in agricultural commodity promotion programs. OCM provides its members and the public with information on a broad range of such programs and issues, including those related to the beef checkoff program, which is implemented and supervised by the Department of

Agriculture. It is essential that OCM is able to access public records available through FOIA requests to government agencies.

6. Defendant OIG is an agency of the Department of Agriculture, an Executive Department of the United States government ("USDA"). OIG is the agency responsible for audits and investigations of the various activities of USDA and its agency components, including activities related to checkoff programs.

## STATUTORY AND REGULATORY FRAMEWORK

### Freedom of Information Act

7. FOIA requires agencies of the government, upon request, to "promptly" make records available to the public. 5 U.S.C. § 552(a)(3)(A); 5 U.S.C. § 552(a)(6)(C)(i).

8. Upon receiving a FOIA request, an agency has twenty (20) working days to respond to the request. 5 U.S.C. § 552(a)(6)(A)(i). A requestor may file an administrative appeal of an agency's failure to disclose requested records. *Id.* at § 552(a)(6)(A)(ii). An agency must make a determination on any such appeal within twenty (20) working days. *Id.* However, a requestor is deemed to have exhausted its administrative remedies, and may seek immediate judicial review of the matter, if the agency fails to comply with either of these time limits. *Id.* at § 552(a)(6)(C).

9. FOIA provides for a limited number of exemptions, but requires that "[a]ny reasonably segregable portion of a record" that is not exempt be provided to the requestor. 5 U.S.C. § 552(b).

## FACTS GIVING RISE TO CLAIMS FOR RELIEF

### A. The Subject of the FOIA Request

10. The beef checkoff is a federal, producer-funded program that is established and governed by federal law and regulation. Despite its self-funded structure and design, the program has been plagued by allegations of misuse of producer funds, conflicts of interest, accounting inaccuracies, and issues related to USDA's oversight responsibilities. Much of the concerns revolve around the virtual chokehold on annual checkoff contracting by a single organization, the National Cattlemen's Beef Association ("NCBA"). NCBA controls half the seats on the beef checkoff program's contracting committee and is consequently able to award itself more than 80% of the tens of millions of producer funds every year.

11. In 2010, the Cattlemen's Beef Board—which is established by federal law as part of the program's administrative operations—commissioned an independent accounting firm to conduct a review of expenses that NCBA had submitted for reimbursement from checkoff funds between the years 2008 and 2010. The beef board executive summary concluded from the results of the review that, among other problems, NCBA breached its financial firewall between authorized checkoff activities and prohibited policy operations. NCBA was required to pay more than $200,000 back to the checkoff program.

12. The following year, Defendant initiated the audit that is now the subject of OCM's FOIA request. Defendant did not publish its report on the audit until March of 2013.

13. Although there is evidence suggesting that Defendant's audit findings revealed concerning vulnerabilities in the beef checkoff and the degree to which the beef board could protect program funds, the March 2013 report did not include such findings. And although it would later be removed when the audit report was withdrawn and re-released, the March version of the report also contained a short and unsubstantiated statement that the beef board's relationship with NCBA complied with legislation.

4

14. Disturbed by the discrepancy between the independent auditor's findings and Defendant's audit report, as well as their knowledge of the conflict of interest allegations that permeate beef checkoff and NCBA operations, OCM quickly filed a FOIA request for records related to the OIG audit and report in order to bring greater transparency and clarity to the report's findings.

**B. The OCM Request for Records**

15. The month after the report was issued, on April 11, 2013, OCM submitted a FOIA request for records dating from 2010 relating to Audit Report No. 01099-0001-21:

1) All records relied on for the findings and conclusions contained in the audit report;
2) All records gathered in preparation for the report (whether ultimately used to support the findings or not);
3) All records indicating or otherwise relating to the IG's determination of relevant data set parameters;
4) All internal and external communications relating to the audit report.
5) All records that relate to the standards by which OIG determined compliance issues relating to operations and structure of the Beef Board (e.g., conflict of interest policies, competitive bidding requirements, etc.).
6) All records referencing or relating to the 2010 independent audit and/or its consideration or exclusion from consideration for the current report.

16. OCM also requested a fee waiver based on the public interest in the information in the records and in the government's oversight of the beef checkoff program.

17. Five days later, Defendant issued a response acknowledging receipt of OCM's FOIA request on April 11, and assigning it an agency log number, 13-00077.

18. On May 7, 2013, OIG sent an email to OCM to "provide a status update" that indicated, among other things, that the agency "qualifies for an additional 10 working days to respond" to the OCM request. The following week, on May 13, OIG sent another email to OCM, this one inquiring whether OCM would consider modifying its request to just the

agency's "official work paper file" and whether OCM would "agree to an alternate time frame for receipt of the records beyond the 30 working days."

19. After some further discussion between the parties, OCM responded to Defendant's request on May 14, indicating that it would not be able to narrow the request by the type of record (e.g., work paper file), rather than by the substance of the information within the records. OCM did, however, indicate that it would be open to discussing a "reasonable alternate time frame" for receipt of the records.

20. Following OCM's response, OIG issued a notice that same day stating that 7,751 pages of records were being transferred to AMS for processing. AMS has long since processed and released these records to OCM. Defendant did not acknowledge OCM's response to its alternate time frame request.

21. Defendant replied to that issue on May 21. The reply did not respond to OCM's suggested alternate time frame or ask OCM to agree to a different one. Instead, Defendant stated that it would be providing records on a rolling basis and it would need "at least a year" to process the request. Included among the records Defendant justified its processing delay on were the 7,751 pages that a week earlier Defendant transferred to AMS for processing.

22. Defendant further indicated that it had "not yet made a determination with respect to the request for a fee waiver."

### C. OIG's "Partial" Responses and OCM's Administrative Appeals

23. On May 23, issued what it called a *partial response* to OCM's FOIA request. However, of the 3,346 pages identified as responsive to OCM's request, OIG released only 101 and withheld the rest in their entirety, claiming without explanation that the records were withheld pursuant to FOIA exemptions (b)(5) and (b)(6).

24. On July 2, OCM submitted an administrative appeal, challenging the sweeping claims of disclosure exemptions and OIG's failure to satisfy FOIA's mandated deadlines for making compliance determinations.

25. Ten days later, on July 12, Defendant sent an email to OCM indicating that the request for a fee waiver had been granted.

26. On July 29, Defendant denied OCM's appeal, except that Defendant reaffirmed that fees would not be charged to process the records request.

### D. OIG's Withdrawal of the Report and Claim of Exemption for *All* Records

27. On August 21, Defendant sent another "response" letter, although this one was not designated as either "partial" or "final." The subject of the response was not a records production, however, but a notice that *seven weeks earlier* the beef checkoff audit report had been withdrawn and placed in a "renewed, active work status." As such, OIG claimed that documents relating to the audit were not releasable pursuant to FOIA Exemption 5. The letter included a notice of OCM's right to appeal Defendant's decision.

28. Defendant's letter contained no indication whether Defendant was temporarily suspending OCM's FOIA request or *cancelling the request altogether*. As such, OCM filed an administrative appeal challenging the Defendant's vague response.

29. On November 4, Defendant granted OCM's appeal of its "August 21, 2013, denial" of the FOIA request. Defendant "determined that the search OIG conducted in response to [OCM's] FOIA request did not identify all of OIG's potentially responsive records prior to [Defendant's] August 21, 2013, letter withholding records pursuant to Exemption 5."

30. Consequently, OIG ordered its FOIA staff to "conduct a new search for responsive records, and to process those records in conformance with the FOIA."

### E. **OIG's New Final Report and Further Partial Responses and Appeals**

31. In January 2014, Defendant published a revised final version of its audit report. Of particular relevance to OCM's FOIA request, among the revisions made to the new report was a removal of the declaration that NCBA's relationship with the beef board complied with the program's governing legislation.

32. Determined to bring clarity to the discrepancies between the findings of the 2010 financial review by the independent accounting firm, the seemingly conflicting finding in the original OIG audit report, and the removal of that finding in the revised report, OCM continued to pursue its request for records relating to Defendant's audit and report. However, OCM had received no records and no further communication from Defendant since the November decision granting its appeal and remanding for a lawfully adequate search. Thus, on February 27, 2014, OCM sent a status inquiry letter to Defendant.

33. Defendant issued three more partial responses to OCM's request, on April 16, June 30, and July 1, 2014. The April 16 response released 292 redacted pages, but withheld more than 1,500 pages in their entirety. The June 30 partial response released *zero* pages, but indicated only that another 506 pages were being withheld in their entirety. Just *one day later*, Defendant issued another partial response, this one releasing 52 redacted pages and withholding more than 600 in their entirety.

34. Each of Defendant's partial responses provided the same boilerplate language regarding the claim of exemption, and each included an express notice giving OCM 45 days to appeal the decisions despite the fact that they were only partial determinations.

35. In an appeal submitted on June 2, OCM challenged Defendant's failure to make a *final* compliance determination, as required by FOIA, as well as Defendant's practice of issuing appeal notices for each "partial" response. OCM asked that, in order to prevent numerous appeals relating to a single request and often involving exactly the same claims

of exemption and challenges to them, Defendant hold its 45-day appeal notices until a final compliance determination is issued. Despite that request, Defendant continued to include the notices in each partial response.

36. The one additional issue that OCM raised in its appeal was that of the format of the records. Although OCM requested that the records be produced in electronic format, Defendant stated that its "standard practice" was to produce records in paper format. Defendant claimed that "[c]onverting the paper records to electronic form would be a laborious and time consuming process and would go beyond the standard practice of OIG." Thus, Defendant concluded that the records were not readily reproducible in electronic format.

37. On August 15, in its next appeal of another of Defendant's partial responses, OCM questioned why at least Defendant's records that are of electronic origin, such as email correspondence, could not be produced in their native electronic format instead of a flattened paper form. Defendant's response indicated that its practice was to print out all emails for review and that reproducing those "paper records as pdf files would add an extra step to our standard practice." Because of the claimed burden that would put on its FOIA staff, Defendant determined that any records that were originally electronically stored are not readily reproducible by OIG in their native formats, and that paper records are not readily reproducible as pdf files.

38. On November 10, 2014, Defendant provided OCM with a "status update." Defendant indicated that it now estimated that it has 40,000 to 50,000 pages of responsive records, more than double its initial estimate. More than 18 months have passed since OCM submitted its request, however, yet Defendant has only processed 10,000 pages of records (and released less than 500). At this rate, OCM would have to wait somewhere between

four and six more years before the agency provides its 20-day compliance determination and finishes processing OCM's request.

39. OCM is still awaiting a final determination and production of a large number of responsive records, including those that Defendant has wrongfully withheld pursuant to sweeping claims of FOIA exemptions.

## CLAIMS FOR RELIEF

### COUNT I: Wrongful Withholding of Records

40. OCM hereby incorporates by reference all the preceding paragraphs as if fully set forth herein.

41. Defendant has wrongfully withheld records from OCM by making broad claims of exemption with little or no substantiation.

42. While Defendant continues to issue appeal notices for each *partial* response, because Defendant has failed to comply with FOIA's statutory deadline for making a final determination, OCM is deemed to have exhausted all administrative remedies and is authorized to seek judicial review of its request.

43. By failing to release unlawfully withheld records that are responsive to OCM's request, Defendant has violated FOIA. OCM is entitled to injunctive relief compelling disclosure of all unlawfully withheld records.

### COUNT II: Violation Relating to the Failure to Produce Records

44. Plaintiffs hereby incorporate by reference all the preceding paragraphs as if fully set forth herein.

45. It has been more than 18 months since OCM submitted its FOIA request and nearly a full year since Defendant determined its initial search was lawfully inadequate and ordered a new one. Yet, OCM is still awaiting a final determination and production of a large number of records.

46. Defendant is well beyond the time limits for making a final determination on OCM's request. 5 U.S.C. § 552(a)(6)(A). Defendant has yet to make compliance determinations even on many of the records that it had already located when it completed its initial search for responsive records back in May 2013.

47. While Defendant continues to issue appeal notices for each *partial* response, because Defendant has failed to comply with FOIA's statutory deadline for making a final determination, OCM is deemed to have exhausted all administrative remedies and is authorized to seek judicial review its request.

48. OCM is entitled to injunctive relief compelling a lawfully adequate search, a final compliance determination, and production of responsive records.

**RELIEF REQUESTED**

WHEREFORE, OCM respectfully request that the Court issue an Order:

A. Requiring Defendant to conduct a lawfully adequate search for all responsive records;

B. Requiring Defendant to make a final compliance determination and to promptly disclose all responsive agency records, including those wrongfully withheld;

C. Awarding OCM costs and reasonable attorneys' fees; and

D. Awarding OCM any other relief that is just and proper.

Respectfully submitted on November 12, 2014.


/s/ Matthew E. Penzer
_____
Matthew E. Penzer, Bar ID CO0016
Jonathan R. Lovvorn, Bar ID 461163
THE HUMANE SOCIETY OF THE UNITED STATES
2100 L. St., N.W.
Washington, DC  20037
(240) 271-6144
(202) 676-2357 Facsimile

Counsel for Plaintiff