**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                                        )
ORGANIZATION FOR COMPETITIVE            )
MARKETS,                                )
                                        )
              Plaintiff,                )
                                        )
       v.                               )  CA No. 14-1902 (EGS)
                                        )
OFFICE OF INSPECTOR GENERAL,            )
UNITED STATES DEPARTMENT OF             )
AGRICULTURE,                            )
                                        )
              Defendant,                )
                                        )
        and                             )
                                        )
NATIONAL CATTLEMEN'S BEEF               )
ASSOCIATION,                            )
              Defendant-Intervenor.)
_____)
```

**<u>MEMORANDUM OPINION</u>**

In this Freedom of Information Act ("FOIA") lawsuit,
plaintiff Organization for Competitive Markets ("OCM") seeks to
compel defendant the Office of Inspector General ("OIG") of the
United States Department of Agriculture ("USDA") to produce
documents related to OIG's 2011 audit of USDA's Agricultural
Marketing Service ("AMS") regarding AMS's oversight of USDA's
beef promotion program. Now pending before the Court is a motion
to intervene filed by prospective defendant-intervenor National
Cattlemen's Beef Association ("NCBA"). Upon consideration of the
motion, the response and reply thereto, the applicable law, and
the entire record, NCBA's motion to intervene is **GRANTED**.

1

However, to avoid unfair delay, NCBA's participation in this litigation is **LIMITED** to (1) reviewing documents and records for its confidential and proprietary business information and (2) objecting to the production of documents and records to OCM exclusively on the basis that those documents and records contain its confidential and proprietary business information.

## I.    Background

Pursuant to federal statute and regulation, the Cattlemen's Beef Promotion and Research Board ("Beef Board") administers a program of beef promotion and research. Mem. Supp. of NCBA's Mot. to Intervene ("Mem. Supp."), ECF No. 34 at 3.[1] Part of the Beef Board's promotion program includes what is known as the "beef checkoff." *Id.* at 4; *see* Compl., ECF No. 1 ¶¶ 1, 11. USDA provides oversight for the Beef Board and its beef checkoff through a component agency, AMS. Mem. Supp. at 4; *cf.* Compl. ¶ 20.

In 2011, USDA OIG initiated an audit to determine if AMS's oversight procedures with regard to the beef checkoff were adequate and in compliance with federal law and regulation. Mem. Supp. at 4; Compl. ¶ 12. Concerned with inconsistent findings between that 2011 OIG audit and an independent accounting firm's

---

[1] "[M]otions to intervene are usually evaluated on the basis of well pleaded matters in the motion, the complaint, and any responses of opponents to intervention." *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981).

2010 review of the beef checkoff program, on April 11, 2013 OCM submitted a FOIA request to OIG seeking records related to its 2011 audit. Compl. ¶¶ 14-15. After approximately a year-and-a-half of back-and-forth between OCM and OIG and a series of administrative appeals regarding OCM's request, *see generally id.* ¶¶ 17-39, on November 12, 2014 OCM filed suit against OIG in this Court. *See generally id.* OCM's complaint alleges that OIG wrongfully withheld records by making overbroad claims of exemption from disclosure and that OIG exceeded the time limits for making its final determinations as to OCM's FOIA request. *Id.* ¶¶ 40-48.

Pursuant to a joint status report OIG and OCM subsequently filed with the Court, the parties agreed that OIG would produce responsive documents to OCM on a rolling monthly basis. *See* Joint Status Report, ECF No. 12. The Court, in turn, ordered OIG to file monthly status reports summarizing its monthly production and overall progress in relation to fulfilling OCM's FOIA request. *See* Minute Entry of April 15, 2015. Over the course of the next 16 months, it appeared that OIG was progressing towards finalizing its production of documents to OCM. *See, e.g.*, Joint Status Report, ECF No. 27; Joint Status Report, ECF No. 29. However, in late August of this year, OIG transmitted 9,358 additional responsive pages to AMS for an AMS review that will take place prior to any of those pages being

produced by OIG to OCM. Declaration of William Allen ("Allen Decl."), ECF No. 33-2 ¶ 15. Those 9,358 pages appear to be in addition to approximately 14,000 pages AMS still has to review based on prior transfers of documents from OIG to AMS. *Id.* Apparently AMS did not review the bulk of those 14,000 earlier-received pages because it thought OIG had determined that they were not responsive or were duplicates of other documents. *Id.* ¶ 11.

Meanwhile, on September 13, 2016, NCBA filed a motion to intervene as a defendant in this matter. *See generally* Mot. to Intervene, ECF No. 34. Although NCBA was "vaguely aware that there may have been a FOIA request to AMS relating to" the 2011 OIG audit, NCBA was not notified of this FOIA request until August 3, 2016, when an AMS FOIA specialist submitted a document to NCBA for its review. Mem. Supp. at 4. Then on August 31, 2016, NCBA received 500 additional pages from AMS for its review. *Id.* at 5. NCBA alleges that it was then first made aware of this litigation on September 6, 2016, when "its attorneys searched for and identified the case and the docket sheet." *Id.* Concerned that many of the responsive documents at issue contain confidential and proprietary NCBA information, NCBA filed its motion to intervene "so as to protect from disclosure its business confidential and proprietary information." *Id.* at 6.

NCBA's motion to intervene is now ripe and ready for the Court's adjudication.

## II.  Analysis

NCBA seeks to intervene as a matter of right under Federal Rule of Civil Procedure 24(a) or, in the alternative, under Rule 24(b)'s permissive intervention standard. *See generally* Mem. Supp. Because this Court finds that NCBA is entitled to intervene as of right, permissive intervention need not be addressed. *See Hardin v. Jackson*, 600 F. Supp. 2d 13, 15 (D.D.C. 2009) (citing *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003)).

Rule 24(a)(2) provides in relevant part:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). Thus the party applying to intervene must satisfy four conditions: (1) its motion must be timely; (2) it must demonstrate an interest relating to the property or transaction which is the subject of the action; (3) it must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) it must demonstrate that its interest cannot

adequately be represented by the existing parties. *Hardin*, 600 F. Supp. 2d at 15 (citing *Fund for Animals*, 322 F.3d at 731). In addition, "a party seeking to intervene as of right must demonstrate that it has standing under Article III of the Constitution." *Fund for Animals*, 322 F.3d at 731-32.

### A.   Standing

Because a prospective intervenor's standing presents a jurisdictional question, this Court must address standing before considering Rule 24(a)(2)'s requirements. *See id.* To establish Article III standing, a prospective intervenor "must show: (1) injury-in-fact, (2) causation, and (3) redressability." *Id.* at 732-33 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002)). OCM argues that there is no "imminent injury-in-fact that would satisfy Article III standing." Pl.'s Resp. to Mot. to Intervene ("Pl.'s Opp."), ECF No. 37 at 5-6. NCBA counters that the disclosure of its confidential and proprietary business information is imminent injury-in-fact caused by OCM's FOIA request and NCBA's exclusion from the litigation concerning that request. Mem. Supp. at 12. NCBA asserts that this injury can be redressed by this Court allowing it to intervene in order to object to disclosures that implicate its confidential information. *Id.*

When a "FOIA requestor seeks the release of documents that are likely to contain the intervenor's confidential information, the intervenor's injury is both particularized and sufficiently imminent." *100Reporters L.L.C. v. U.S. Dep't of Justice*, 307 F.R.D. 269, 283 (D.D.C. 2014); *cf. Venetian Casino Resort, L.L.C. v. EEOC*, 409 F.3d 359, 367 (D.C. Cir. 2005) (holding that a party had standing because it had demonstrated a "substantial probability" that a disclosure policy would "harm its concrete and particularized interest in retaining the confidentiality of protected information"). Here, on August 31, 2016, AMS conveyed 500 responsive pages to NCBA for review, and NCBA determined that those 500 pages were NCBA documents, "a large number of which contain NCBA's confidential and proprietary business information." Mem. Supp. at 1. The risk that the confidential information in those documents is disclosed to OCM is imminent injury-in-fact caused by OCM's FOIA request that could be redressed by NCBA having the opportunity to object to disclosure. *See Appleton v. FDA*, 310 F. Supp. 2d 194, 197 (D.D.C. 2004) ("As for standing, the applicants have shown that FDA's disclosure of their trade secrets or confidential information would cause them to suffer an injury-in-fact that intervention to defend against disclosure could redress."). That 5,000 pages of the set of responsive pages that AMS has only recently begun reviewing mostly "originated from outside

7

organizations," Allen Decl. ¶ 16, underscores the substantial
probability that document production in this case runs the risk
of disclosing NCBA's confidential information. Accordingly, NCBA
has standing to intervene in this litigation.

**B.   Rule 24(a) Intervention as of Right**

Having determined that NCBA has standing, the Court turns
to the Rule 24(a) intervention as of right requirements. OCM
challenges the timeliness of NCBA's motion, whether NCBA
sufficiently has an interest in the documents at issue in this
case, and, assuming such an interest exists, whether NCBA's
ability to protect that interest would be impaired if it were
not permitted to intervene. Because OCM does not argue that
NCBA's interest can be adequately represented by the existing
parties, this Court need not consider Rule 24(a)(2)'s fourth
requirement.

**1.   Timeliness**

NCBA argues that its motion to intervene is timely because
it was filed just over a month after an AMS FOIA specialist
first sent it a document to review and only a week after being
made aware of this case. Mem. Supp. at 8-9. Further, it contends
that this litigation has not progressed very far because there
has been no Rule 26(f) conference, no scheduling order has been
issued, no discovery has occurred, and a document production
schedule "is only now being considered." Mem. Supp. at 9.

Finally, it asserts that its intervention would not disrupt the litigation or pose an unfair detriment to the existing parties. *Id.* OCM counters that the motion to intervene is untimely because NCBA admits that it was "vaguely aware" for years of a possible FOIA request pertaining to the 2011 OIG audit and yet took no action to dispel the rumor. Pl.'s Opp. at 2-3. Further, OCM asserts that this litigation has progressed to an advanced stage because the Court put in place a 12-month processing schedule almost 18 months ago. *Id.* at 3. Accordingly, OCM suggests, it would be unfairly prejudiced by any further delay that arises from NCBA's intervention. *See id.*

"The timeliness of a motion to intervene is 'to be judged in consideration of all the circumstances,'" *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) (quoting *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001)), such that measuring the length of time since inception of the suit is one factor to consider but "'not in itself the determinative test.'" *Id.* (quoting *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 129 (D.C. Cir. 1972)). The other factors typically assessed in this inquiry include "the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *Smoke*, 252 F.3d at 471. The

probability of prejudice to the original parties is the factor afforded the most weight. *See Roane*, 741 F.3d at 151.

As to the first timeliness factor——the length of time since the inception of this suit——NCBA's belated application to intervene in this case, which comes nearly two years after the complaint was filed and nearly a year-and-a-half after the Court put in place a production schedule, certainly counts against its assertion that its motion is timely. Further, its admission that it was "vaguely aware that there may have been a FOIA request to AMS relating to" the 2011 OIG audit, Mem. Supp. at 4; Declaration of Douglas L. Evans, ECF No. 34-1 ¶ 3, suggests that even if NCBA did not have actual knowledge of the instant lawsuit, it still had constructive knowledge that a FOIA lawsuit existed that implicated its confidential information. *See United States v. Bank of America*, 303 F.R.D. 114, 118 (D.D.C. 2014) ("To determine whether a motion was timely, courts look to the date that the party seeking to intervene knew or *should have known* that any of [its] rights would be directly affected by the litigation.") (quotation marks omitted) (emphasis added).

The second and third timeliness factors, however, weigh in favor of deeming NCBA's motion timely. NCBA's purpose in intervening in this lawsuit is ultimately to prevent any improper disclosure of its confidential and proprietary business information, *see generally* Mem. Supp., and NCBA has a strong

need for intervention as a means of preserving its rights in not
having confidential information disclosed. That OCM has not even
made an argument regarding Rule 24(a)(2)'s fourth factor——
whether the existing parties can adequately represent NCBA's
interests——underscores NCBA's need to intervene to protect its
interests, as it cannot rely upon OIG to do so. *See 100Reporters
L.L.C.*, 307 F.R.D. at 279-80 (explaining that "the plaintiff's
interest lies in disclosure, the government entity's interest
lies in responding appropriately to the plaintiff's request, and
the intervenor's interest lies in protecting its trade secrets
and confidential information.") (quotation marks omitted).

Given that the first three timeliness factors——elapsed
time, intervenor's purpose, and intervenor's need to intervene——
cut in different directions, the most important timeliness
factor——whether permitting intervention would cause the existing
parties an unfair detriment, *see Roane*, 741 F.3d at 151——proves
to be decisive. Here, if NCBA's intervention in this litigation
is appropriately limited, this factor does not weigh against
deeming NCBA's intervention timely.

OCM's interest in this lawsuit is two-fold: It has an
interest in receiving responsive, non-exempt documents, and it
has an interest in receiving those documents without seriously
undue delay. *See Payne Enters., Inc. v. United States*, 837 F.2d
486, 494 (D.C. Cir. 1988) ("[U]nreasonable delays in disclosing

non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses.") (quoting *Long v. IRS*, 693 F.2d 907, 910 (9th Cir. 1982)). Given that NCBA admits that it has a small staff ill-equipped to conduct a complete FOIA review and that such a review would be "beyond NCBA's usual workload and expectations," Mem. Supp. at 6, permitting NCBA to enter this litigation on equal footing with original defendant OIG would have the consequence of "unduly disrupting litigation" and would result in an "unfair detriment" to OCM in the form of an unreasonable delay. *See Roane*, 741 F.3d at 151. OCM placed its FOIA request with OIG in April 2013, Compl. ¶¶ 14-15, filed this lawsuit in November 2014, *see generally id.*, and reasonably believed it was advancing towards finalized production over the course of the subsequent two years. If NCBA, without sufficient resources to conduct a full FOIA review, is permitted to conduct the same review and make all the possible objections to disclosure as original defendant OIG, OCM would be subject to an unreasonable delay that would seriously "violate the intent and purpose of the FOIA." *See Payne Enters.*, 837 F.2d at 494.

On the other hand, if NCBA were not permitted to intervene in this litigation at all, that would not eliminate some delay that will still inevitably occur. That is because even if NCBA is a non-party, whenever AMS cannot readily determine that

information NCBA provided to it is privileged or confidential
business information, AMS is obligated to obtain and consider
NCBA's views and provide NCBA a reasonable amount of time to
object to any decision to disclose the information. *See* 7 C.F.R.
§ 1.12. Thus, permitting NCBA to intervene on a limited basis—
permitting it to only review documents for its confidential and
proprietary business information and only make objections to
disclosure on the ground that documents contain that
information—will not likely unduly exacerbate the delay that
would otherwise stem from the non-party notice-and-comment
procedure mandated by the applicable regulation.

In sum, because permitting NCBA to intervene on equal
footing with original defendant OIG would cause unfair detriment
to OCM, allowing such intervention would tip the timeliness
balance in favor of deeming NCBA's motion untimely.[2] But because
limiting NCBA's intervention in the manner described in the
preceding paragraph would not cause unfair detriment to OCM,
allowing that limited intervention would tip the timeliness
balance in favor of deeming NCBA's motion timely.[3] Accordingly,

_____

[2] The same conclusion would result under a permissive
intervention analysis. *See NAACP v. New York*, 413 U.S. 345, 365
(1973) ("Whether intervention be claimed of right or as
permissive, it is at once apparent, from the initial words of
both Rule 24(a) and Rule 24(b), that the application must be
'timely.'").
[3] The Court's discussion of its authority to limit NCBA's
participation is postponed until after it discusses the

the Court deems NCBA's motion timely under the latter
alternative.

### 2.   Interest

NCBA asserts that it has a clear interest in preventing the
improper disclosure of its confidential and proprietary business
information. Mem. Supp. at 9-10. OCM counters that any interest
in preventing such disclosure has not yet concretely
materialized and, in any event, any interest in preventing
disclosure of confidential information does not exist when a
FOIA request seeks records related to one agency's audit of
another agency. Pl.'s Opp. at 4-5.

Because "preventing the disclosure of commercially-
sensitive and confidential information is a well-established
interest sufficient to justify intervention under Rule 24(a),"
*100Reporters L.L.C.*, 307 F.R.D. at 275-76 (collecting cases),
NCBA does have an adequate interest in the subject of this
action. OCM's arguments otherwise are unavailing.

First, OCM's contention that NCBA's interest is only
speculative at this point is undermined by NCBA's assertion that
a "large number" of the 500 pages of responsive documents that
AMS has already given to NCBA for its review contain
confidential and proprietary business information. Mem. Supp. at

---

remaining contested Rule 24(a)(2) requirements. *See infra* Part
II.C.

1. And, second, OCM's assertion that an intervenor's interest in preventing disclosure of confidential information evaporates when that information is implicated in a FOIA request related to one agency's audit of another relies on a distinction without a difference. The premise of OCM's argument seems to be that cases holding that a proposed intervenor had an interest in preventing the disclosure of confidential information involved a proposed intervenor seeking to prevent the agency to whom the intervenor's information was originally provided from disclosing that information to a FOIA plaintiff. *See, e.g.*, *Gov't Accountability Project v. FDA*, No. 12-1954, 2015 WL 12552028, at *2 (D.D.C. Mar. 6, 2015); *100Reporters L.L.C.*, 307 F.R.D. at 275-78; *Appleton*, 310 F. Supp. 2d at 197. Here, on the other hand, there is an additional step: NCBA seeks to prevent OIG from disclosing its confidential information, but OIG only obtained NCBA's information by auditing another agency, AMS. But this Court does not see how the "well-established interest" a proposed intervenor can have in preventing the disclosure of confidential information that was identified in *Government Accountability Project*, *100Reporters L.L.C.*, and *Appleton* is altered simply because the information might have passed hands from one agency to another. Accordingly, the interest that was sufficient for Rule 24(a)(2) purposes in those prior cases is sufficient in this one as well.

### 3.    Impairment of Interest

NCBA asserts that if its application for intervention is denied, its interest in preventing disclosure of its confidential and proprietary business information will be impaired. Mem. Supp. at 10. And it asserts that if it is not allowed to intervene and thereby influence the setting of a production schedule, that schedule might demand rushed production, increasing the risk that NCBA will overlook something and inadvertently disclose confidential information. *Id.* at 10-11. OCM counters that NCBA's interest will not be impaired if it is not permitted to intervene because Executive Order and regulation mandate that whenever NCBA's confidential information is implicated in a responsive document, NCBA will be given the opportunity to review the relevant document and voice its objections to disclosure to OIG and AMS. Pl.'s Opp. at 5.

"In determining whether an applicant's interests will be impaired, courts in this circuit look to the 'practical consequences' that the applicant may suffer if intervention is denied." *100Reporters L.L.C.*, 307 F.R.D. at 278 (citing *NRDC v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977)). "One such consequence that frequently qualifies as impairment is when the disclosure of materials following the disposition of a FOIA action 'could impair the applicants' ability to protect their trade secrets or confidential information.'" *Id.* (quoting

16

*Appleton*, 310 F. Supp. 2d at 197). Accordingly, because forbidding NCBA's participation in this FOIA action would increase the likelihood that its confidential information is disclosed when production of responsive records is completed, NCBA satisfies Rule 24(a)(2)'s impairment requirement. OCM's argument that NCBA can adequately avoid impairment of its interest by reviewing documents and voicing objections to disclosure to OIG and AMS via the notice-and-comment procedure is unavailing. In the event that NCBA were a non-party and OIG and AMS were to disagree with NCBA's objection regarding a given disclosure, this Court would not be apprised of NCBA's objection and thus might permit the disclosure of information that it otherwise would have permitted NCBA to exempt from production as confidential business information. Thus, because not permitting NCBA to intervene in this action threatens to impair its "well-established interest" in preventing the disclosure of its confidential and proprietary business information, NCBA has satisfied the interest impairment requirement.

   C.   **Scope of Intervention**

   OCM argues that if NCBA is allowed to intervene, its participation should be "expressly limited to its claimed interest in reviewing and being heard on any claims of confidential business information" contained in the responsive records at issue in this case. Pl.'s Opp. at 7. NCBA asserts

17

that its role in this litigation should not be so constrained. *See* Reply to Pl.'s Opp. to Mot. to Intervene, ECF No. 38 at 4.

As explained *supra* in Part II.B.1, the Court has already concluded that NCBA's participation *must* be limited in order for its motion to be deemed timely. That limitation is an appropriate exercise of this Court's discretionary authority. Although an intervenor usually "participates on equal footing with the original parties to a suit," *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1146 (D.C. Cir. 2009) (quotation marks omitted), "district courts may impose appropriate conditions or restrictions upon the intervenor's participation in the action." *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 20 (D.D.C. 2010) (citing *Fund for Animals*, 322 F.3d at 737 n.11). "In the end, the primary limitation on the district court's discretion is that any conditions imposed should be designed to ensure the fair, efficacious, and prompt resolution of the litigation." *Id.*

For the reasons already stated *supra* in Part II.B.1, the fair, efficacious, and prompt resolution of this litigation requires that the Court limit NCBA's participation to reviewing responsive documents for its confidential and proprietary business information and to objecting to the production of documents to OCM exclusively on the basis that those documents contain its confidential and proprietary business information.

## III. Conclusion

NCBA's motion to intervene is **GRANTED**, but its participation in this litigation is **LIMITED** in the manner described above. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:     **Emmet G. Sullivan**
            **United States District Judge**
            **October 25, 2016**