**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| ORGANIZATION FOR COMPETITIVE MARKETS,<br><br>       Plaintiff,<br><br>v.<br><br>OFFICE OF INSPECTOR GENERAL, USDA,<br><br>       Defendant,<br><br>and<br><br>NATIONAL CATTLEMEN'S BEEF ASSOCIATION,<br><br>       Defendant-<br>       Intervenor. |

No. 14-cv-1902 (EGS)

**MEMORANDUM OPINION**

**I.  Introduction**

In this Freedom of Information Act ("FOIA") lawsuit, Plaintiff Organization for Competitive Markets ("OCM") seeks to compel Defendant, the Office of Inspector General ("OIG") of the United States Department of Agriculture ("USDA"), to produce documents related to OIG's 2011 audit of USDA's Agricultural Marketing Service ("AMS") regarding AMS' oversight of USDA's beef promotion program entitled "Agricultural Marketing Service

1

Oversight of the Beef Research and Promotion Board's Activities" (the "audit report").

Following several rounds of document production, administrative appeals, and the filing of this action, the remaining records have been withheld in full or redacted pursuant to FOIA Exemptions 4, 5, 6, and 7. Pending before the Court are the parties' cross motions for summary judgment. Upon consideration of the motions, the responses and replies thereto, applicable law, the entire record, and for the reasons explained below, the Court **GRANTS** Defendant USDA-OIG's Motion for Summary Judgment, **GRANTS** Defendant-Intervenor NCBA's Motion for Summary Judgment, and **DENIES** Plaintiff OCM's Motion for Summary Judgment.[1]

## II.  Background

### A. Factual Background

OCM is a non-profit organization whose "mission is to work for transparent, fair, and truly competitive agricultural and food markets." Compl., ECF No. 1 ¶ 4.[2] OCM "monitors federal checkoff operations and expenditures" to "provide[] its members

---

[1] On April 9, 2019, USDA-OIG filed a motion seeking leave to file a sur-reply. *See* Mot. Leave to File Sur-Reply, ECF No. 103. Since the Court grants USDA-OIG's Motion for Summary Judgment, the Court **DENIES** USDA-OIG's Motion for Sur-Reply.

[2] When citing electronic filings throughout this opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

and the public with information on a broad range of such programs and issues." *Id.* at ¶ 5. The relevant program here is the Beef Checkoff Program, a beef promotion program, *see* Compl., ECF No. 1 ¶ 1; which is administered and supervised by the USDA and the AMS. *See* Counter-Statement of Disp. Facts by Pl. ("Pl. Counter SODF"), ECF No. 90-3 ¶ 117. The Cattlemen's Beef Promotion & Research Board ("CBB" or "Beef Board") and the Beef Promotion Operating Committee ("BPOC") "assist in developing and implementing beef promotion and research projects for the Beef Checkoff Program." *Id.* at ¶ 121.

In January 2011, USDA-OIG notified AMS that it would "conduct an audit of AMS' oversight of the CBB" to "evaluate the structure and relationship between AMS and the CBB, the CBB and Qualified State Beef Councils [("QSBCs")], and the CBB and contractors with the Beef Checkoff Program." *Id.* at ¶¶ 132-133. During this audit, OIG met with several QSBCs[3] and entities that contract with the Beef Checkoff Program ("Beef Checkoff Contractors").[4] These entities provided USDA-OIG with documents to assist in the audit. *See id.* at ¶ 142.

---

[3] QSBCs collect the funding for the Beef Checkoff Program through the assessment on cattle sold in the United States. Pl. Counter SOMF, ECF No. 90-3 ¶ 123. After providing a portion to the CBB, the QSBCs "retain[] the remainder for activities of the [QSBC] that are authorized by the Beef Act." *Id.*

[4] "[T]he Beef Checkoff Program contract[s] with established national nonprofit industry-governed organizations to implement

OIG issued its initial audit report on March 29, 2013, titled "Agricultural Marketing Service Oversight of the Beef Research and Promotion Board's Activities."[5] Pl. Counter SODF, ECF No. 90-3 ¶ 135. After USDA-OIG published the audit report, OCM submitted a FOIA request to USDA-OIG seeking the following records:

> (1) All records relied on for the findings and conclusions contained in the audit report; (2) All records gathered in preparation for the report (whether ultimately used to support the findings or not); (3) All records indicating or otherwise relating to the IG's determination of relevant data set parameters; (4) All internal and external communications relating to the audit report; (5) All records that relate to the standards by which OIG determined compliance issues relating to operations and structure of the Beef Board (e.g., conflict of interest policies, competitive bidding requirements, etc.); and (6) All records referencing or relating to the 2010 independent audit and/or its consideration or exclusion from consideration for the current report.

Compl., ECF No. 1 ¶ 15. Between productions at the administrative level and during this litigation, USDA-OIG has produced over 23,000 documents. *See* Decl. of Alison Decker, Assistant Counsel to the Inspector General with USDA-OIG

---

programs of promotion, research, consumer information and industry information." *Id.* at ¶ 126.

[5] After receiving letters questioning the quality of the report, USDA-OIG re-opened the audit to ensure the quality of the findings. Pl. Counter SOMF, ECF No. 90-3 ¶ 136, 138. USDA-OIG published its final audit report on January 31, 2014. *Id.* at ¶ 140.

("Decker Decl."), ECF No. 88-3 ¶ 125. OIG referred an additional 24,000 documents to AMS for processing. *Id.*

### B. Procedural History

USDA-OIG and Defendant-Intervenor, National Cattlemen's Beef Association ("NCBA"),[6] filed Motions for Summary Judgment on November 14, 2018. *See* Second Mot. Summ. J. ("OIG Mot. Summ. J."), ECF No. 88; Def.-Int. NCBA's Mot. Summ. J. ("NCBA Mot. Summ. J."), ECF No. 87.

Plaintiff filed its Opposition and Cross-Motion for Summary Judgment on January 9, 2019. *See* Cross-Mot. Summ. J. by OCM ("OCM Mot. Summ. J."), ECF No. 90; Pl.'s Opp. Mot. Summ. J., ECF No. 91. On February 26, 2019, Defendant and Defendant-Intervenor filed their oppositions and replies. *See* Mem. Opp. to Cross-Mot. Summ. Judgment by NCBA ("NCBA Opp. & Reply"), ECF No. 96; Reply to Opp. Mot. Summ. J. by OIG ("OIG Opp. & Reply"), ECF No. 97. Plaintiff filed its reply on March 22, 2019. *See* Reply to Opp. to Mot. Summ. J. by OCM ("OCM Reply"), ECF No. 102. The parties

---

[6] On October 25, 2016, the Court granted NCBA's Motion to Intervene for the limited purpose of "reviewing documents and records for NCBA's confidential and proprietary business information and objecting to the production of documents and records to OCM exclusively on the basis that those documents and records contain NCBA's confidential and proprietary business information." Order Granting Mot. Int., ECF No. 39 at 1. Accordingly, NCBA moves for summary judgment only as to the Exemption 4 withholdings and USDA-OIG's segregability obligations with regard to those withholdings. *See* NCBA Mot. Summ. J., ECF No. 87 at 37-53.

each filed Notices of Supplemental Authority and responses thereto in June and July 2020. *See* ECF Nos. 105-107, 109. The cross motions are ripe and ready for the Court's adjudication.

## III. Legal Standard

### A. FOIA

FOIA was enacted to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (internal quotation marks omitted). Accordingly, FOIA favors "full agency disclosure unless information is exempted under clearly delineated statutory language." *Id.* at 360-61 (internal quotation marks omitted). The agency has the burden of showing that the withheld information falls under a FOIA exemption. *See* 5 U.S.C. § 552(a)(4)(B); *Pub. Citizen Health Rsch. Grp. v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999) (quoting *Niagara Mohawk Power Corp. v. DOE*, 169 F.3d 16, 18 (D.C. Cir. 1999)).

### B. FOIA Improvement Act

The FOIA Improvement Act ("FIA"), Pub. L. No. 114-185, 130 Stat. 538 (2016), imposes an additional requirement on agencies seeking to invoke this or any other FOIA exemption. In relevant part, the FIA provides that: "An agency shall . . . withhold information under this section only if . . . (I) the agency reasonably foresees that disclosure would harm an interest protected by [a FOIA] exemption; or (II) disclosure is

prohibited by law." 5 U.S.C. § 552(a)(8)(A). In other words, "an agency must release a record—even if it falls within a FOIA exemption—if releasing the record would not reasonably harm an exemption-protected interest and if its disclosure is not prohibited by law." *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 73 (D.D.C. 2018), *on reconsideration in part*, 442 F. Supp. 3d 240 (D.D.C. 2020).

Congress imposed this additional requirement on agencies "to foreclose the withholding of material unless the agency can articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021) (citation and internal quotation marks omitted). Meeting the foreseeable harm requirement is "an independent and meaningful burden." *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019) (quoting *NRDC v. EPA*, No. 17-CV-5928 (JMF), 2019 WL 3338266, at *1 (S.D.N.Y. July 25, 2019)).

### C. Summary Judgment

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In FOIA cases, a government agency is entitled to summary judgment only if "the agency proves that it has fully discharged its [FOIA]

obligations . . . after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citations omitted). "FOIA cases typically and appropriately are decided on motions for summary judgment." *Coffey v. Bureau of Land Mgmt*, 249 F. Supp. 3d 488, 494 (D.D.C. 2017).

When considering a motion for summary judgment under FOIA, the court must review the record *de novo*. 5 U.S.C. § 552(a)(4)(B). The court may rely on agency affidavits or declarations that are "relatively detailed and non-conclusory." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (affirming that "relatively detailed and non-conclusory" declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents") (internal quotations omitted). "The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they 'describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Coffey*, 249 F. Supp. 3d at 494 (quoting *Larson v.*

*Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). "[T]he government need not justify its withholdings document-by-document; it may instead do so category-of-document by category of document." *Crooker v. ATF,* 789 F.2d 64, 67 (D.C. Cir. 1986).

## IV. Analysis

### A. Defendant's Search for Responsive Documents Was Adequate

FOIA requires an agency to conduct a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). An agency has the burden to "show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

Since receiving Plaintiff's FOIA request, USDA-OIG has conducted multiple rounds of searches for responsive records. *See* Decker Decl., ECF No. 88-3 ¶¶ 14-19, 69. After identifying the individuals on the audit team and other personnel who might have relevant records, as well as gaining an understanding of where the audit team's records and communications were maintained, USDA-OIG conducted searches of both hard copy and electric files in the relevant field offices and various personnel email records. *See id.* ¶¶ 14-19, 20-29. USDA-OIG

conducted a second search in January 2015, again "forward[ing] the FOIA request to all relevant parties in Audit to conduct a search for any records responsive to the request." *Id.* ¶ 70. Reasonable search terms were identified, *id.* ¶ 77; and searches were conducted of the audit team email, regional field office electronic and hard copy files, the audit SharePoint site, and the Office of Counsel email and records, *id.* ¶¶ 69-93.

Plaintiff does not question the adequacy of USDA-OIG's search, and the Court concludes that the searches conducted by OIG were sufficient to meet USDA-OIG's FOIA obligations. Accordingly, the Court **GRANTS** summary judgment to USDA-OIG on the adequacy of the search.

### B. USDA-OIG's Exemption Claims

Plaintiff challenges USDA-OIG's use of Exemption 4 and 5 to withhold or redact two groups of documents responsive to Plaintiff's FOIA request.[7] The first group consists of 193

---

[7] USDA-OIG invoked Exemption 7(C) and 7(D) to redact handwritten notes related to a law enforcement matter and a record prepared by a confidential source. OIG Mot. Summ. J., ECF No. 88-1 at 14-15. Plaintiff does not contest these redactions. *See generally* Pl.'s Opp. Mot. Summ. J., ECF No. 91. The Court has reviewed the *Vaughn* indexes, declarations, and relevant legal authority, and after careful consideration, **GRANTS** USDA-OIG's Motion for Summary Judgment for documents withheld pursuant to Exemptions 7(C) and 7(D). USDA-OIG invoked Exemption 6 to withhold names, titles, email addresses, and phone numbers of lower-level USDA-OIG and USDA-AMS employees. OIG Mot. Summ. J., ECF No. 88-1 at 11. OCM disputes only the withholding of "title, posting, and job grade for lower[-]level employees." OCM Mot. Summ. J., ECF No. 90 at 42. USDA-OIG responds that "this information is

records containing information about the Beef Checkoff

Contractors and the QSBCs, which were withheld pursuant to

Exemption 4.[8] The second group, withheld pursuant to Exemption

5's deliberative process privilege, includes draft audit reports

and communications between USDA-OIG and AMS and/or the Beef

Board during OIG's audit of AMS.[9] The Court addresses each group

of documents below.

> ### 1. USDA-OIG Properly Invoked Exemption 4 to Withhold Confidential Business Information from the QSBCs and Beef Checkoff Contractors

Pursuant to Exemption 4, USDA-OIG and AMS redacted and

withheld information about Beef Checkoff Contractors[10] and

---

substantially in OIG's Vaughn indices." Def.'s Opp'n to Pl.'s
Mot. Summ. J. & Reply Br., ECF No. 98 at 22. OCM's reply
briefing does not address this issue. *See generally*, OCM Reply,
ECF No. 102. The Court therefore concludes that OCM no longer
contests the Exemption 6 withholdings. USDA-OIG has explained
why disclosure of the withheld information "would constitute a
clearly unwarranted invasion of personal privacy." *Id.* at 11
(quoting 5 U.S.C. § 552(b)(6)). Accordingly, the Court **GRANTS**
USDA-OIG's Motion for Summary Judgment for documents withheld
pursuant to Exemption 6.

[8] The withheld documents are listed in the *Vaughn* Index Prepared
by USDA-AMS for AMS & OCM Bates Nos. (Aug. 31, 2018) ("AMS
*Vaughn* Index I"), ECF No. 88-33, and *Vaughn* Index Prepared by
USDA AMS for NCBA Bates Nos. (Aug. 31, 2018) ("AMS *Vaughn* Index
II"), ECF No. 88-34.

[9] The withheld draft audit reports are listed in Ex. 58-
Supplemental *Vaughn* Index for Draft Audit Reports ("OIG Supp.
*Vaughn* Index") (Aug. 26, 2016), ECF No. 88-6, at 382-94.

[10] The withheld records from Beef Checkoff Contractors include
137 records from NCBA, Second Supp. Evans Decl., ECF No. 87-4 ¶¶
60-196; eight records from the American National Cattle Women,
Inc. ("ANCW"), Decl. of Gwen Geis ("Geis-ANCW Decl."), ECF No.
88-10 ¶¶ 8, 12-15a; four records from the United States Meat
Export Federation ("USMEF"), Decl. of Dan Halstrom ("Halstrom-

information from various QSBCs.[11] Pl. Counter SODF, ECF No. 90-3
¶¶ 177-80. FOIA Exemption 4 protects "trade secrets and
commercial or financial information obtained from a person [that
is] privileged or confidential." 5 U.S.C. § 552(b)(4).

### a. USDA-OIG's Declarations and *Vaughn* Indexes are Sufficiently Detailed

OCM contends that USDA-OIG's declarations and *Vaughn*
indexes are insufficient to support withholding under Exemption
4. OCM Mot. Summ. J., ECF No. 90 at 37-39. First, OCM argues
that the declarations and *Vaughn* indexes are conclusory and do
not meet the agency's burden of proof because they "are replete
with buzzwords . . . but they all lack meaningful substance."
*Id.* at 38-39. The Court agrees with USDA-OIG and is persuaded
that the declarations and *Vaughn* indexes provide sufficient
details about the content of the withheld information.

---

USMEF Decl."), ECF No. 88-11 ¶¶ 8, 12-15; and thirteen records
from the Meat Import Council of America Inc. ("MICA"), Decl. of
Laurie Bryant ("Bryant-MICA Decl."), ECF No. 88-12 ¶¶ 8, 13-19.
*See* Counter SOMF, ECF No. 90-3 ¶¶ 177-78.
[11] Information was redacted from six records from the Kansas Beef
Council ("KBC"), Decl. of Kevin Thielen ("Thielen-KBC
Decl."),ECF No. 88-13 ¶¶ 30-43; five records from the Michigan
Beef Industry Council ("MBIC"), Decl. of George Quackenbush
("Quackenbush-MBIC Decl."), ECF No. 88-14 ¶¶ 26-30; one record
from the Nebraska Beef Council ("NBC"), Decl. of Ann Marie
Bosshamer ("Bosshamer-NBC Decl."), ECF No. 88-15 ¶ 26; eleven
records from the Pennsylvania Beef Council ("PBC"), Decl. of
Bridget Bingham ("Bingham-PBC Decl."), ECF No. 88-17 ¶¶ 31-41;
and one record from the Texas Beef Council ("TBC"), Decl. of
Richard Wortham ("Wortham-TBC Decl."), ECF No. 88-16 ¶ 25. *See
also* Counter SOMF, ECF No. 90-3 ¶¶ 179-80.

To justify its withholdings, an agency must provide a "relatively detailed justification that specifically identifies the reasons why a particular exemption is relevant and correlate[s] those claims with the particular part of a withheld document to which they apply." *S. All. for Clean Energy v. DOE*, 853 F. Supp. 2d 60, 67 (D.D.C. 2012) (quoting *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)) (internal quotations omitted). "[C]onclusory and generalized allegations of exemptions" are not sufficient to justify withholdings. *Vaughn v. Rosen*, 484 F.2d 820, 826-27 (D.C. Cir. 1973) (finding indexing insufficient where the government merely claimed that all the withheld documents fell under three exemptions).

The *Vaughn* indexes in this case provide document-specific and exemption-specific descriptions for all documents that were withheld pursuant to Exemption 4. *See* AMS *Vaughn* Index I, ECF No. 88-33 and AMS *Vaughn* Index II, ECF No. 88-34. The *Vaughn* indexes contain a document-by-document list asserting the basis and explanation for the withholding and a document description, including the date of the document, the agency that authored it, and the contents. *See* AMS *Vaughn* Index I & II, ECF Nos. 88-33-88-34. For example, many of the documents are described as "accounting journal and financial ledger," "business ledger journal entries of ANCW invoices," or "profit and loss ledger"

*See Vaughn* Index I, ECF No. 88-33, at 28 (AMS007996-008001), 29 (AMS008024-008111), 85 (AMS018319-018324). The document descriptions for the other documents withheld under Exemption 4 contain similar detail. This level of detail is wholly distinguishable from *Vaughn*, where the government failed to identify which documents fell under which exemptions. 484 F.2d at 827. Moreover, both the *Vaughn* indexes and the declarations from each QSBC and Beef Checkoff Contractor provide the type of information contained in the withheld document and detailed reasons for confidentiality, including that the information is not the kind normally released to the public.[12] For these reasons, the Court concludes that the declarations and *Vaughn* indexes are sufficiently detailed.

### b. The Financial and Commercial Records from the QSBCs and Beef Checkoff Contractors are Confidential Under Exemption 4

OCM does not dispute that the withheld information constitutes commercial or financial information obtained from a person, but disputes that the information is confidential. *See* OCM Mot. Summ. J., ECF No. 90 at 31. The Court therefore

---

[12] For example, AMS018574-018601 contains "information regarding MBIC's assets, liabilities, revenue, accounting bases, detailed financial information, administrative expenses, and aggregated information concerning MBIC payroll and employee benefits." Quackenbush-MBIC Decl., ECF No. 88-14 ¶ 30.

addresses whether the information is confidential for purposes of Exemption 4.

When the parties were initially briefing these issues, the Court of Appeals for the District of Columbia Circuit's ("D.C. Circuit") test for "confidentiality" depended on whether the withheld information was compelled or voluntarily submitted to the government. *See Shteynlyuger v. Ctrs. for Medicare & Medicaid Servs.*, 698 F. Supp. 3d 82, 118 (D.D.C. 2023); *Critical Mass Energy Project v. Nuclear Regul. Comm'n*, 975 F.2d 871, 878-79 (D.C. Cir. 1992). However, in *Food Marketing Institute*, the Supreme Court rejected this distinction and "considered two conditions that might be required for information provided to the government to be confidential within the meaning of Exemption 4: (1) that information is 'customarily kept private, or at least closely held, by the person imparting it,' and (2) that 'the party receiving [the information] provides some assurance that it will remain secret.'"[13] *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 434 (2019) [hereinafter *FMI*]. *FMI* clearly requires the first condition, however, neither the

---

[13] After the Supreme Court published *Food Marketing Institute*, the parties submitted briefs containing the supplemental authority and revised arguments on the Exemption 4 withholdings. *See* ECF Nos. 105, 106, 107, and 109. For Exemption 4, the Court focuses on the arguments in the parties' supplemental authority briefing.

Supreme Court nor the D.C. Circuit have addressed whether the second condition is necessary for information to be "confidential." *See Shteynlyuger*, 698 F. Supp. 3d at 118. As it currently stands in this Circuit, "information is confidential under Exemption 4 if it is of a kind that would customarily not be released to the public by the person from whom it was obtained." *Id.* at *20.

The Court is persuaded that USDA-OIG has met its burden of showing that the redacted information is generally treated as private by the owner of the records. The withheld contents include information such as financial reports, accounting ledgers, budgets, and vendor contact information. *See e.g.*, Bingham-PBC Decl., ECF No. 88-17 ¶¶ 24-26. USDA-OIG provided declarations from each QSBC and Beef Checkoff Contractor specifically stating for each document at issue that the entities have "never publicly disclosed such information." *See, e.g.*, *id.* at ¶¶ 24-26, 31-41 ("PBC has never publicly disclosed its accounting ledgers and financial journals, employee allocation worksheets, employee timesheets, financial statements, vendor invoices, bank statements, or deposit summaries.").

OCM does not offer any contradictory evidence of public disclosure or bad faith that would call the declarations into question. Rather, OCM argues that the second condition in *FMI*—

government assurance of privacy—is a necessary condition which is absent from the Beef Act. OCM Resp. to OIG Notice of Supp. Auth., ECF No. 106 at 2. OCM also argues that the "contractors do not have an expectation of privacy in information that, by law, they have no right to keep secret and that they are required to keep and provide the government . . . ." *Id.* However, as discussed above, the D.C. Circuit has not extended the confidentiality test to require an explicit government assurance of privacy, leaving the only required condition for confidentiality whether the information is customarily released to the public. *See Shteynlyuger*, 698 F. Supp. 3d at 118; *Renewable Fuels Ass'n v. EPA*, 519 F. Supp. 3d 1, 11-13 (D.D.C. 2021) (declining to require a government assurance of privacy "[a]bsent a Supreme Court holding squarely abrogating Circuit precedent—which Food Marketing clearly is not").

Accordingly, the Court concludes that the financial and commercial records from the QSBCs and Beef Checkoff Contractors are confidential under Exemption 4.

### c. USDA-OIG and NCBA Have Satisfied the Foreseeable Harm Standard

To invoke exemption 4, USDA-OIG and NCBA must also satisfy the foreseeable harm standard set forth in the FIA. *See Shteynlyuger*, 698 F. Supp. 3d at 123-24. "[A]pplication of the foreseeable-harm standard to Exemption 4 requires a showing of

foreseeable commercial or financial harm to the submitter upon release of the contested information." *Id.* at 124 (internal quotations and citations omitted) (recognizing "that few courts have considered what burden the foreseeable-harm requirement imposes on agencies" under Exemption 4). OCM does not contest whether USDA-OIG and NCBA satisfied the foreseeable harm requirement. *See generally* OCM Mot. Summ. J., ECF No. 90.

The Court is persuaded that USDA-OIG and NCBA have sufficiently established the foreseeable harm that could occur if the withheld information regarding the Beef Checkoff Contractors and QSBCs are released to the public. Not only do the withheld documents contain information on NCBA's relationship with vendors, but they also contain detailed information on NCBA's "business operations, budgeting, strategies, and operational efficiencies." NCBA Mot. Summ. J., ECF No. 87 at 48-49. In the hands of NCBA's competitors or the public, NCBA has adequately shown that any of this information alone could foreseeably cause financial and competitive harm.

For all these reasons, as to the 193 documents withheld or redacted pursuant to Exemption 4, the Court **GRANTS** USDA-OIG and NCBA's Motions for Summary Judgment.

## 2. USDA-OIG and AMS Properly Invoked Exemption 5's Deliberative Process Privilege to Withhold Documents

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption encompasses "three evidentiary privileges: the deliberative process privilege, the attorney-client privilege, and the attorney work product privilege." *Tax Analysts v. IRS*, 294 F.3d 71, 76 (D.C. Cir. 2002). While USDA-OIG withheld documents pursuant to all three privileges, OCM only contests the documents withheld under the deliberative process privilege.[14]

To assert the deliberative process privilege, the agency must establish that the document at issue is both "predecisional

---

[14] Plaintiff's briefing does not challenge the withholding of certain documents under the attorney-client communications privilege or the attorney work-product privilege. The withheld documents include: (1) emails and memorandum between OIG auditors and the OIG Office of Counsel attorneys; and (2) legal research, internal memorandum and drafts of memorandum prepared by the OIG Office of Counsel attorneys. *See* Decker Decl., ECF No. 88-3 ¶¶ 139-142. The Court concludes that the records were properly withheld under both privileges because they consist of requests for legal advice, legal research prepared by attorneys, or other attorney work product related to potential litigation in response to the audit. *See id.*; OIG *Vaughn* Index I, ECF No. 88-6 at 284-381; *see also Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 114 (D.D.C. 2005); *Exxon Corp. v. DOE*, 585 F. Supp. 690, 700 (D.D.C. 1983). Accordingly, the Court **GRANTS** USDA-OIG's Motion for Summary Judgment as to documents withheld pursuant to the attorney-client communications privilege or the attorney work-product privilege.

and deliberative." *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020). A document is predecisional if it was "generated before the agency's final decision on the matter" and deliberative if it was "prepared to help the agency formulate its position." *Campaign Legal Ctr. v. U.S. Dep't of Just.*, 34 F.4th 14, 23 (D.C. Cir. 2022) (quoting *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 786 (2021)); *Vaughn*, 523 F.2d at 1136 (describing a "deliberative" document as "a direct part of the deliberative process in that it makes recommendations or expresses opinion on legal or policy matters"). The deliberative process privilege "should be construed 'as narrowly as consistent with efficient Government operation.'" *Tax'n With Representation Fund v. I.R.S.*, 646 F.2d 666, 677 (D.C. Cir. 1981) (quoting *EPA v. Mink*, 410 U.S. 73, 87 (1973)).

Due to the importance of the factual context of each document when asserting the deliberative process privilege, the agency must provide "precisely tailored explanations for each withheld record at issue." *Nat'l Sec. Couns. v. CIA*, 960 F. Supp. 2d 101, 188 (D.D.C. 2013). "At a minimum, the agency must provide three basic pieces of information in order for the deliberative-process privilege to apply: (1) the nature of the specific deliberative process involved, (2) the function and significance of the document in that process, and (3) the nature

of the decisionmaking authority vested in the document's author and recipient." *Id.* at 189.

### a. There Is No Basis to Invoke the Government Misconduct Exception to the Deliberative Process Privilege

The Court first addresses OCM's argument that government misconduct in conducting the audit triggers the government misconduct exception to the deliberative process privilege, and therefore, USDA-OIG cannot invoke the privilege with regard to certain records at issue in this case. *See* OCM Mot. Summ. J., ECF No. 90 at 23-24 (citing *In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997)).

OCM claims that there are two categories of misconduct here. First, OCM asserts that USDA-OIG failed to act independently in the audit by "permitting the audited agency [(AMS)] to participate in the audit's decision-making process." OCM Mot. Summ. J., ECF No. 90 at 23-24. Second, OCM contends that USDA-OIG misled the public about the extent of AMS' role in the audit report. *Id.* at 24. In support of these allegations, OCM points to two pieces of evidence suggesting that OIG breached its duty to act objectively and independently under the Government Auditing Standards. *See id.* The first is an email from Frank Woods, an AMS Audit Liaison Officer, to William Henderson, USDA-OIG Assistant Director of Audit for Food, Nutrition, Marketing, and Development, where Mr. Woods wrote,

"There is still a LOT of heartburn over the report as written, and I'm afraid it will reflect poorly on USDA (as a whole) if released as is." Ex. 3, ECF No. 90-2 at 10. The second is a letter from Gil Harden, Assistant Inspector General for Audit at USDA-OIG, to Mr. Woods and David Shipman, Administrator at AMS, attaching the "official draft report." Ex. 5, ECF No. 90-2 at 14. OCM argues that, together, these show AMS played an improper, "much more influential role" in the audit findings while giving the public the idea that AMS was minimally involved. OCM Mot. Summ. J., ECF No. 90 at 24.

Assuming arguendo that the exception applies to FOIA cases, *see Nat'l Whistleblower Ctr. v. Dep't of Health & Hum. Servs.*, 903 F. Supp. 2d 59, 67 (D.D.C. 2021) (concluding the government misconduct exception can be invoked in a FOIA case); OCM has not, however, met the high bar required to invoke the exception. *See Ctr. for Pub. Integrity*, 486 F. Supp. 3d at 331-32 (emphasizing the extraordinarily narrow application of the government misconduct exception). "In the rare cases that have actually applied the exception, the 'policy discussions' sought to be protected with the deliberative process privilege were so out of bounds that merely discussing them was evidence of a serious breach of the responsibilities of representative government," i.e., "[t]he very discussion ... was an act of

government misconduct." *Id.*; *see also Tax Reform Research Grp. v. IRS*, 419 F. Supp. 415, 426 (D.D.C. 1976).

Here, the evidence does not reach the egregiousness required to trigger the exception. While the evidence shows that USDA-OIG communicated and collaborated with AMS regarding the audit report and that AMS was potentially concerned about the audit findings, the combination of these does not equate to evidence that USDA-OIG lost its objectivity and independence during the audit or that USDA-OIG had a nefarious intent. As USDA-OIG points out, discussions with the entity being audited are part of its core responsibilities. OIG Mot. Summ. J., ECF No. 88-1 at 7-8; *see* GAO, Gov. Auditing Standards §§ 3.07, 6.62 (Feb. 2024); *Ctr. for Pub. Integrity*, 486 F. Supp. 3d at 333-34 (finding the government misconduct exception did not apply where plaintiff failed to show any nefarious intent or that the withheld contends would reveal egregious government misconduct).

The same is true for Plaintiff's second theory of government misconduct—misleading the public. OCM offered no evidence that USDA-OIG intended to mislead the public. Unlike in *Alexander v. FBI*, where the court applied the government misconduct exception after seeing evidence that the government knew of the wrong impression it gave to the public, and the misinformation fostered a pattern of "political cover-up," here, there is no evidence that USDA-OIG produced statements or

reports giving misinformation to the public, and there is no evidence that the public was under the impression that AMS did not assist with the audit report. *See Alexander v. FBI*, 186 F.R.D. 154, 165-66 (D.D.C. 1999) (a non-FOIA case).

For these reasons, the Court concludes that there is no basis to invoke the government-misconduct exception to the deliberative process privilege to certain documents at issue in this case.

### b. The Withheld Documents Are Pre-Decisional and Deliberative

OCM takes issue with USDA-OIG invoking the deliberative process privilege only for the records listed in OIG's Supplemental *Vaughn* Index for Draft Audit Reports. *See* OCM Mot. Summ. J., ECF No. 90 at 23; Supplemental *Vaughn* Index for Draft Audit Reports ("OIG Supp. *Vaughn* Index") (Aug. 26, 2016), ECF No. 88-6 at 382-394.[15] These withheld documents consist of email

---

[15] In total, AMS invoked the deliberative process privilege to withhold or redact thirty-six records, including records containing: (1) emails between CBB and OIG, (2) emails between CBB and AMS, (3) memoranda from CBB to AMS, (4) internal CBB emails, (5) internal CBB documents, and (6) one draft of OIG's audit report. USDA-OIG withheld an additional 173 records pursuant to the deliberative process privilege consisting of draft audit reports and communications between OIG officers or OIG and AMS/CBB related to the audit. *See* OIG *Vaughn* Index I, ECF No. 88-6 at 284; OIG Supp. *Vaughn* Index, ECF No. 88-6 at 382; OIG Mot. Summ. J., ECF No. 88-1 at 6, 20-21; Feeney declaration and *Vaughn* Index (ECF No. 88-5 Ex. 3). Plaintiff only challenges the documents in Exhibit 58 as identified above. The Court confirms that the remainder of the withheld records were pre-decisional and deliberative, and therefore were

exchanges between USDA-OIG and AMS and "discussion drafts" attached thereto. *See* OIG Supp. *Vaughn Index*, ECF No. 88-6 at 382-394.

As to whether the documents are pre-decisional, OCM argues that USDA-OIG is wrong to claim that all records prior to the public release of the final audit report are pre-decisional. *See* OCM Mot. Summ. J., ECF No. 90 at 16. However, OCM has failed to explain why the documents are not pre-decisional. *See id*. at 9. The Court is persuaded that USDA-OIG has established that the withheld documents are pre-decisional because the *Vaughn* index and declarations clearly establish that the communications and exchanged drafts at issue were part of USDA-OIG's deliberative process in determining the audit findings, were created prior to a final decision, and do not reflect the agency's final decision. *See* Decker Decl., ECF No. 88-3 ¶ 129; OIG Supp. Vaughn *Index*, ECF No. 88-6 at 382-394. And OCM does not argue that the communications or the exchanged drafts constituted a final decision or were treated as law by USDA-OIG, but rather, that USDA-OIG inappropriately applied a "wholesale exemption for the entire audit process." OCM Mot. Summ. J., ECF No. 90 at 15 (internal quotations omitted). This argument fails to address

---

properly withheld pursuant to the deliberative process privilege and **GRANTS** USDA-OIG's Motion for Summary Judgment as to those groups of documents.

the applicable legal standard. *See Campaign Legal Ctr.*, 34 F.4th at 23.

As to whether the records are deliberative, OCM argues that USDA-OIG is wrong to claim that because the records "play[] a role in the final audit report," they are all deliberative. *See* OCM Mot. Summ. J., ECF No. 90 at 17. However, OCM has failed to explain why the documents are not deliberative. *See id.* at 10. The Court is persuaded that USDA-OIG has established that the withheld documents are deliberative. The record establishes that USDA-OIG communicated with AMS as part of an iterative process to "obtain necessary information, clarify audit issues, and discuss possible resolution of the audit findings and recommendations." OIG Mot. Summ. J., ECF No. 88-1 at 7; *see also* OIG Supp. *Vaughn* Index, ECF No. 88-6 at 382-394. Clearly, this "give-and-take" between the agencies supported USDA-OIG's efforts in conducting audits and is deliberative in nature.

Accordingly, the Court concludes that the withheld documents are pre-decisional and deliberative.

### c. USDA-OIG Has Satisfied the Foreseeable Harm Standard

To invoke the deliberative process privilege, USDA-OIG must also satisfy the foreseeable harm standard set forth in the FIA. *See Reps. Comm. for Freedom of the Press*, 3 F.4th at 361. Under this standard, "[a]n agency shall . . . withhold information

under this section only if . . . (I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b); or (II) disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). This is a "heightened standard for an agency's withholdings under Exemption 5." *Jud. Watch, Inc.*, 375 F. Supp. 3d at 100.

OCM does not contest whether USDA-OIG satisfied the foreseeable harm standard. The Court is persuaded that USDA-OIG has sufficiently established the foreseeable harm that could occur if these communications and "discussion drafts" were released to the public. Not only would it hinder the ability for AMS and USDA-OIG to openly communicate in the future, but it would also confuse the public as to what the final audit findings were or why certain suggestions were not implemented. Decker Decl., ECF No. 88-3 ¶ 135. This type of inter-agency reflection and collaboration is exactly what the deliberative process privilege was designed to protect.

### d. The Court Rejects OCM's Argument that Exemption 5 Is Inapplicable Here

Finally, OCM argues that "[e]xemption 5 is inapplicable to communications between an auditing OIG and agencies under audit," *See* OCM Mot. Summ. J., ECF No. 90 at 17; contending that "[t]he relationship between an auditing Inspector General and an agency under audit is not 'deliberative,'" *id.* at 19; and that

"[d]raft documents shared with entities under audit are not deliberative," *id.* at 22. The Court disagrees.

The deliberative process privilege is "[i]ntended to protect open and frank discussion among government officials to enhance the quality of agency decisions." *Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 243 F. Supp. 3d 155, 163 (D.D.C. 2017) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001) (internal quotations omitted)). The Government Accountability Office's ("GAO") *Government Auditing Standards* require that USDA-OIG maintain independence while simultaneously obtaining comments from officials of the audited entity. *See* GAO, Gov. Auditing Standards §§ 3.07, 6.62 (Feb. 2024). By communicating with AMS throughout the audit and providing AMS with draft reports for comment, USDA-OIG is fulfilling its responsibility of "develop[ing] a report that is fair, complete, and objective," by including the "perspective of the audited entity's responsible officials and corrective actions they plan to take." *Id.* at § 6.62. OCM does not cite to, nor can the Court find, any authority suggesting that there is or should be an exception to the deliberative process privilege to allow disclosure of the agencies' encouraged collaboration.

OCM also argues the exchanged drafts lost any protection under Exemption 5 when USDA-OIG shared the documents with AMS.

OCM Mot. Summ. J., ECF No. 90 at 23-24 (citing *Ctr. for Auto Safety v. DOJ*, 576 F. Supp. 739 (D.D.C. 1983)). OCM points the Court to *Center for Auto Safety*, arguing that once a document that may have been deliberative is shared with a self-interested party, the document loses any claim to withholding under Exemption 5. *Id.* Asserting that AMS was a self-interested party for the purposes of the audit, OCM relies on—but fails to cite any authority supporting—a "Congressional recognition" that "agency heads are not disinterested deliberators when evaluating their own programs," *id.* at 24.

However, OCM's characterization of *Center for Auto Safety* misses several key aspects of the court's holding. In *Center for Auto Safety*, the court held that records were disqualified for protection under Exemption 5 when the Department of Justice ("DOJ") released the records to the *public*, which was also the DOJ's adversary, during ongoing negotiations. *Ctr. for Auto Safety*, 576 F. Supp. at 747. Here, drafts here were exchanged between two government agencies as required by auditing standards. *See* GAO, Gov. Auditing Standards § 6.62; *see also Hamilton Sec. Grp. v. Dep't of Hous. & Urb. Dev.*, 106 F. Supp. 2d 23, 31-32 (D.D.C. 2000) (holding drafts fell under deliberative process privilege despite knowing that OIG's audit process included receiving two rounds of auditee comments). Accordingly, the Court concludes that sharing the draft reports

with AMS does not rid them of their protection under Exemption
5.

### e. The *Vaughn* Index and Declarations Are Adequate

OCM argues that the *Vaughn* index and declarations provided
by the government "aren't even close to the precisely tailored
explanations for each document required to assert a deliberative
process privilege." OCM Mot. Summ. J., ECF No. 90 at 8 (internal
quotations omitted). OCM claims that USDA-OIG's *Vaughn* entries
merely "contain the same boilerplate text in the justification
for withholding section." *Id.* at 21. After reviewing the *Vaughn*
index for the documents at issue and the available declarations,
the Court agrees with USDA-OIG that the detail provided is
adequate. The Supplemental Vaughn Index for Draft Reports
provides the document date, the author(s) of the document
(including the author's agency and role in the audit), the part
of the deliberative process the document was part of, and the
role of the document in that process. *See* OIG Supp. *Vaughn*
Index, ECF No. 88-6 at 382-394.

Moreover, the *Vaughn* index and declarations clearly
establish the deliberative, give-and-take nature of the
communications and exchanged drafts. The withheld emails and
attached drafts between AMS and USDA-OIG contain back and forth
comments and suggestions between the agencies. *See e.g.*, *id.* at

386 ("[T]hese discussion draft versions contain Donald Pfeil's and Joseph Mickiwicz's assessments and comments . . . relat[ing] to existing comments from AMS."). For example, bates number 746 is an "[i]nternal email cover, dated December 6, 2012, attaching an audit report discussion draft titled, 'CBB Audit Discussion Draft 12-6-12.docx,' containing AMS' views." *Id.* at 383. After listing the authors and recipients of the email and discussion draft, USDA-OIG notes, "AMS sent this document to OIG in response to OIG's request for comments on the discussion draft." *Id.* The email and attached draft contained AMS' "opinions and assessments" on the draft report. *Id.* This description makes it clear that the withheld records contain AMS' opinions on USDA-OIG's draft audit report. The detail provided by USDA-OIG is significantly distinguishable from that in *Muttitt v. Department of State* cited by Plaintiff. *See* OCM Mot. Summ. J., ECF No. 90 at 28. In *Muttitt*, the *Vaughn* index did not tell the court anything more than the document was written by "two unidentified personnel in two unidentified government agencies exchang[ing] some sort of 'comments' about some unspecified 'aspect' of a negotiation . . . ." *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 307 (D.D.C. 2013). Accordingly, the Court concludes that the *Vaughn* Index and declarations are adequate to withhold the documents under Exemption 5.

For these reasons, the Court concludes that USDA-OIG properly invoked Exemption 5 to protect the documents identified in the Supplemental *Vaughn* Index for Draft Audit Reports, Ex. 58, ECF No. 88-6 at 382-394.

**C. Segregability**

"The focus of the FOIA is information, not documents." *Mead Data Cent., Inc.*, 566 F.2d at 260. Therefore, "even if some materials from the requested record are exempt from disclosure, any 'reasonably segregable' information from those documents must be disclosed after redaction of the exempt information unless the exempt portions are 'inextricably intertwined with exempt portions.'" *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting 5 U.S.C. § 552(b)).

The agency must provide "a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." *Valfells v. CIA*, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (citation and internal quotation marks omitted). The Court has an "affirmative duty" to ensure that the agency satisfies its segregability obligations. *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some

"quantum of evidence" from the FOIA requester. *Sussman v. U.S. Marshals Serv.*, 494 F. 3d 1106, 1117 (D.C. Cir. 2007).

Here, Mr. Brook, AMS' FOIA Officer, affirmed the agency's diligence in conducting a review to identify non-exempt material, averring that "AMS produced to OCM responsive documents with redactions, segregating out non-exempted from exempted information." Decl. of Mark R. Brook ("Brook Decl."), ECF No. 88-7 ¶¶ 135-36.

With regard to the Exemption 4 withholdings, OCM argues that the declarations and *Vaughn* indexes fail to "explain why records relating to checkoff-contracted services cannot be separated from non-checkoff business records." OCM Mot. Summ. J., ECF No. 90 at 40. To rebut the presumption that the agency complied with its obligation to release segregable material, the requester must offer "evidence that would warrant a belief by a reasonable person" to believe segregable information exists. *Id.* Only after the presumption is rebutted does the burden shift to the government to prove no segregable information exists. *Id.*

OCM offered no evidence demonstrating that segregable information exists. OCM's claim that Beef Checkoff financial records should be segregable from the entities' non-checkoff funds not only fails to rebut the presumption, but it also assumes that OCM would be entitled to Beef Checkoff financial records. *Id.* at 39. Given that the Court has concluded that all

financial records from the Beef Checkoff Contractors and QSBCs are "confidential" under Exemption 4, OCM's argument is unpersuasive.

With regard to the Exemption 5 withholdings, Mr. Brook's declaration together with the Court's determination that the information has been properly withheld under the exemption, are sufficient to trigger the presumption that the agencies satisfied their FOIA obligations with respect to segregability. The Court concludes that USDA-OIG's *Vaughn* Indexes and declarations demonstrate that all reasonably segregable, non-exempt information has been released to OCM. Accordingly, the Court **GRANTS** USDA-OIG's Motion for Summary Judgment and NCBA's Motion for Summary Judgment as to USDA-OIG's segregability obligations.

## V.   Conclusion

For the foregoing reasons, the Court **GRANTS** USDA-OIG's Motion for Summary Judgment, ECF No. 88; **GRANTS** NCBA's Motion for Summary Judgment, ECF No. 87; and **DENIES** OCM's Cross-Motion for Summary Judgment, ECF No. 90. An appropriate order accompanies this Memorandum Opinion.

**Signed:**    **Emmet G. Sullivan**
             **United States District Judge**
             **November 12, 2024**